Woodford v. Wendy Peoples In my view, Your Honors, this case presents two threshold issues that logically precede the particulars of the lying-in-wait and robbery questions. The first is, does Bowie apply at all to the situation in that we're dealing with a court turning one crime into a greater crime rather than turning previously non-criminal behavior into criminal behavior? And as I understood the briefing, a respondent had raised that only as a tea issue, that it was arguable that it applied only to the latter situation based on the fact that the U.S. Supreme Court had never done it in the former situation. And some of the language might indicate that the Court sees it as the latter situation. And I heard this morning that, in fact, they are intending or now adopt that as the correct interpretation of Bowie, not an arguable interpretation of Bowie. But before I address that, I want to just touch on what I think the second question is, because I think the briefs don't really flesh this one out in a whole lot of detail. But I think that if Bowie does apply, how does it apply? What's the difference between fair notice and foreseeability of change? Do we read a case any differently for Bowie purposes than we read it for traditional legal purposes? And how foreseeable is foreseeable? Now, I think I want to focus on the second question, because I think there's a little more to say about that right now and come back to the first, unless the Court wants me to jump right in on the first question and has questions about that. But I do, if time permits, intend to come back to it. Hearing no objection, I'll continue to my second question. I think that's really an important question, and in some ways it's the subtext of most of this appeal, because, again, how Bowie applies and what does foreseeability all mean? Because I think it animates a lot of the superficial dispute between the parties, and that's respondents' contention that the petitioner is overanalyzing the cases and looking too much at holding rather than some of the discussion, and, frankly, petitioners' contention in our brief that respondents basically just cherry-picking pieces of dictum and words and phrases out of context to construct a novel theory of foreseeability. Now, I think Bowie clearly articulates the test that, for the most part, is adopted by any court that thoroughly analyzes a Bowie claim. Bowie starts with the unexpected, indefensible, unforeseeable characterization that the Court has never retreated from. In the more recent case of Rogers v. Tennessee, the Court talks about the core concepts of notice, foreseeability, and, in particular, the right to fair warning. When this Court analyzes a Bowie case in some detail, it articulates a standard that's essentially identical, the hypothetical person of ordinary intelligence and what would he have understood. Unfortunately, I think this is an area where there's a lot of imprecise paraphrasing of the Bowie test, usually in cases where the Bowie claim is warranted to be frivolous and it's passed over very quickly. But respondents seizes on some footnotes and quotes from the Sixth, Seventh, and Eighth Circuits about the without the slightest support test, the U.S. v. Killian alleged radical shift test. In fact, although Killian cited and quoted in both the AOB and the reply brief, the word radical or the phrase radical shift never appears anywhere in it, or the Welton v. Nix outlandish change. Now, none of these cases have the slightest independent analysis of the Bowie test. They are simply reciting in a shorthand fashion what Bowie seems to indicate to that Court and are not purporting to modify the test in any way. So I think we're still dealing with reasonable notice, not some sort of ephemeral notice or slight or those sorts of phrases. Now, in fairness, I want to point out that the Ninth Circuit. I'm not saying there has to be an affirmative notice, something, a prediction as to the future or some affirmative indication so that it can be affirmatively presumed that the law is going to go in this direction, even though there hasn't been a case for those particular facts. I think that is one situation that comes up fairly frequently, but I'm not saying there has to be a case saying something like the question this case raises a question that's for another day, but if we were to decide it, we think thus and such. I don't think it has to be that strong at all. Oh, I did want to point out, before I lose the train of thought, that the Ninth Circuit has done this, too. There's a procuring opinion from 1982 in a tax protest case. It starts off with this appeal is frivolous, and in one sentence says the Bowie claim is frivolous because there's no radical shift here. And the radical shift gets repeated in a couple of other cases, including the Hayes case recently. But I think in fairness, the test is really reasonable foreseeability. Are we free to disregard the Hayes case? I mean, as a panel, we're bound to what other panels say. But it's not holding. It's just a statement that there's no radical shift. There's plenty, and if we want to view it or are concerned about viewing it as in trust circuit conflict, there are plenty of cases in the circuit, Poland versus Stewart, that actually discuss the test in fair amount of detail that's stated in a way much more favorably. So I think it would be unfair to say that Hayes holds that Bowie, when it's said unforeseeable, actually meant unforeseeable in the sense of it being radical. Now, it's fine to say our citations are better than theirs or our quotes are better than theirs, but I think I really can back up that there is some content to the foreseeability test. And I can do that by comparing and contrasting the leading U.S. Supreme Court cases on this, Bowie and Rogers versus Tennessee, Bowie where there was an adequate notice and Rogers, on the other hand, where there was. And just to go through them quickly, in Bowie, what was not adequate notice of the fact that the trespass statute might be interpreted to include the protesters refused to leave the lunch counter, it was not adequate that the protesters expected they were going to get arrested. It was not adequate that the civil trespass laws in South Carolina had already been interpreted that way, and it was not adequate that other states had interpreted virtually identical criminal trespass statutes the same way South Carolina had. In Rogers, what did it take to be on adequate notice? Rogers dealt with the year-and-a-day rule. You can't be convicted of a murder unless your victim dies within a year and a day of the murderous attack. It's only manslaughter. Justice O'Connor, writing for the court, wrote in some detail there was lots and lots of notice here. The year-and-a-day rule was an antiquated relic with no modern validity, she says. It had only the most tenuous foothold in the law of Tennessee to begin with, so there's no real reliance interest in the case at all. And many other jurisdictions had recently considered whether to get rid of the doctrine and had done so. So there were these three very strong signs that the times they are a-changing. So getting back to your question, Judge Clifton, about, yes, you can be on notice if things are changing, and you don't have to have exact notice that they're going to change in your jurisdiction in a particular way. But in addition to those three things that Justice O'Connor found, she also went to some length to point out that this was a common law doctrine and we weren't dealing with a matter of statutory interpretation and foreseeability issues have less importance when we're talking about the common law, and also pointed out that it really wasn't a reliance case at all because there was no indication that Wilbert Rogers set out to kill his victim but to make sure the victim would linger for a year and a day so that he could only be convicted of manslaughter rather than murder. So although Rogers tells us about foreseeability in a Bowie context, I think the important points about it is there's a lot of foreseeability and the Court relies to a great extent on the fact that it's not really a notice case at all, unlike this case. Well, tell me, enlighten me, because I haven't done exhaustive research here, enlighten me on how many times we have actually recognized a Bowie claim. Bowie itself comes out of a highly charged historic context. Yes, and not many Bowie claims win, and the ones that do win tend to be sympathetic cases, and I think none of us are naive enough to think that there's not some normative basis for some of these decisions. Bowie, civil rights protesters, and there were lots of attacks being made in that case, and the claim that ultimately won was one of the narrowest, and Wilbert Rogers, who lost, did set out to kill somebody. But that certainly doesn't suggest that the doctrine only applies in the case where the Court has an innocent person. No, but can you just enlighten me as to what kinds of claims have been victorious? There's a few cited in our brief. I actually forget what the underlying facts were. There's the Devine case out of the Tenth Circuit, and there's a couple of others there. But often they do tend to be someone who wasn't guilty of anything. Right. Was there any? I'm just wondering if you can point out a case where there was somebody who was committing a serious crime, but it just wasn't quite this one, perhaps under the previous law. In honesty, Judge Schroeder, I can't think of a case where there's a very serious crime like murder that the Bowie claim was successful on. Of course, it's entirely possible, but I can't think of one. So we would be the first, huh? I'm not sure about that. Well, it would be interesting for us to know that. I would be happy to take a look back at our cases. Well, no, that's okay if you don't know it. But, no, I don't know as I stand here today. That becomes important because the fair warning basis of it, I mean, you're sort of detached from reality here. Just as you say Mr. Rogers didn't set out to kill in a way that caused the victim to linger more than a year and a day, I think it's probably fair to say that your client didn't set out to kill in a way that separated the victim from the automobile by a quarter mile, raising all of these questions about whether it's sufficiently connected to the robbery. And there's discussion in the cases about this point, that really we are dealing with a legal fiction. There's Justice Holmes' opinion that criminals don't read statutes before they decide whether they're going to commit crimes. And in the Bowie context, I think it's the Tenth Circuit picks up on this and says, and certainly criminals don't go out and read cases. So we are, in a way, talking about the principle of it more than the reality of it. But given that we're talking about principle and what is actually out there, I think it's very important to realize that the situation with California robbery and the Lavender case is almost the polar opposite of Rogers and some of these other cases about the winds of change. Why isn't the theft, just to get specific, why isn't the theft of the keys enough to sustain a special circumstance that obviously was done off his person? That's actually disputed, Judge Thomas. But it was argued to the jury. It was argued, but there was evidence on both sides. Right. So let's just assume that it was the keys. Why wouldn't that be enough to support a special circumstance of robbery, the immediate presence requirement of the robbery? If we're assuming that we know that that's the theory of the jury, that might be a special verdict or something. Yeah, don't fuss with my question. I'm just saying, is the theft of the keys enough to support a special circumstance? I probably put it in artfully. It may be. And this was briefed in the district court and conceded by a respondent that we have a Stromberg problem because it was argued both ways to the jury, that the forcible taking of the key, if that's what happened, and the forcible taking of the car both supported the robbery and there's no way to know which the jury found so that the robbery can be justified. But the taking of the keys alone, even if the robbery of the car hadn't occurred, would be enough to support special circumstance. I haven't thought about that, Your Honor, and I haven't researched, but my reaction is that it probably is. It probably is a robbery because it's something of value. And do you have any opinion on whether, under California law, theft of a key is constructive theft of a car? I don't know, Your Honor. I would tend to doubt it, but that's just my opinion based on having practiced in the field for a while. So back to the point about Lavender, we have a California statute that's been in effect for about 150 years at the time. It's been construed countless times in thousands, maybe 10,000s of cases, to find foreseeability. Someone had to dig and dig and dig for a case, and there's only one that talks about luring and its dictum, and it's 47 years old at the time of the offense, and it's never been cited by any other case for a luring proposition. It's been cited about it. Do you have any authority to give us that says to the contrary, that luring is not robbery, that separating the victim from, in this case, the automobile, has to be done by force, that luring doesn't work? Well, I think Bowie answers that. You start with the notice that the statute provides, and the statute says the property has to be taken from not only the presence of the victim but the immediate presence. So Bowie also tells us you can't simply stop at the statute if it's been given interpretive gloss by the case law. The question, then, is whether the case law has ever expanded it, not whether the case law has ever said, no, it means what it says. So I don't think the converse works at all. The question has to be, have they ever indicated adequately that it would apply when there's no presence or immediate presence but a luring constructive theory of immediate presence? Well, what about people versus horns on that theory? That's the 59 case where the gas station attendant was taken away from the presence where the robbery was taking place, and liability was found citing lavender. Right. He was forcibly taken out of the presence, and so it's a very unremarkable holding. There are many, many cases in California, elsewhere I presume, that say it's still a robbery if you forcibly get the person out of the presence of the property and then go back and take the property. So, yes, horns does cite lavender for this idea that presence is an elastic concept and all that, but it's just a very straightforward use of force. Well, they don't talk about force in horns, though. I mean, they talk about the trick or device by which the physical presence of the clerk was detached. If they're citing lavender with approval from under its protection and control, should not avail the defendant's claim the property was not taken in the immediate presence. Right. If I catch the phrase... So it seems to me, I mean, your argument is it's distinguishable because it was by force, but that doesn't seem to be the way that the California Supreme Court sounds. At best, we have two cases using this phrase. Well, is there a logical reason why force should make it different? I mean, if the issue here is presence detaching from the immediate physical adjacency, is there a logical reason why force should be treated differently than trick? Because it's in the statute. Robberies are taken by force. So I think the cases are explainable by you can take the person away from the property or you can take the property away from the person. But here we're talking about presence. I mean, the issue is the definition of presence. Granted, force has to be part of robbery, but there's no doubt there was force involved in this crime as well. So statute provides the force has to be used to take the property from the person's presence. So pointing a gun at someone and saying, let's get out of here while my confederate empties your cash register is separating the person and the property by force. There is the use of force in the immediate presence of the property. So I think it's a very important difference. Well, what's different? I mean, let's assume that the victim in this case had been forcibly taken away from his car. That's different. So it's a hypothetical. But that would satisfy the immediate presence requirement. Absolutely. No question about that. So I guess I echo Judge Clifton's questions. What does force have to do with immediate presence? I mean, here you basically have the same circumstance as the gas station tenant, Horns, where you're separating the person from his property. And yet Horn and then Citing Lavender talks about that's constructive immediate presence. I don't understand where force comes into it, because there's obviously force applied here to get the keys to the car. It's the use of force to remove property from the victim's immediate presence. So it comes up because it's right in the statute. And even the California Supreme Court says you can't just simply say there's a use of force on someone somewhere and then property is taken and that's a robbery. But would it be a robbery if something stopped? Suppose you're trying to take the car. Hypothetical, not these facts. You're trying to take a car. You take somebody away from the car, but you never actually move the car anyplace. Is that robbery? Just because they've removed the victim from the physical property rather than removing the property from the victim? It probably is uncompleted, so it may be an attempt if something stops. But it has still satisfied the element of the use of force to separate. But going back to the facts of this case, there's no question but that force was used at some point. So no question that the requirements of robbery are satisfied. The issue is whether the separation, whether the personal presence element, there's something unique about force there. Right. There's the use of force. No question about that. But the element is the use of force to separate the victim from property that's in his immediate presence. So it doesn't meet that element. I would turn to the concealment before your time runs out, or lying and waiting in the concealment area. Sure. Let me ask you a question on that, which is I asked your colleague. It looks to me as though this is a standard instruction. Is that true? I don't know that he got the exact Calgic instruction on lying and wait. Around this time, a lot of the cases were getting modified instructions. Morales, I think, got them modified. But the essence of it, that the concealment is that which results in an attempt to take the victim by surprise or something, was in the standard parlance at the time. Yeah, there's a case, actually, that uses the same language, and that's what led me to believe it was probably a standard instruction. But the instruction given said, together with concealment by ambush or some other secret design. Right. Now, if my assumption is correct, and that's part of the standard California instructions, why isn't that sufficient notice? Because what that instruction is referring to is not a situation where there's no concealment whatsoever. The other design, or the other secret design, is, I believe, an attempt to capture those cases where the attack is not from the position of concealment. That because ambush, as it was used in the old California cases, meant a classic situation where you're in hiding, the person doesn't even know where the shots are coming from. And the other secret design comes from cases where they say, it's still lying in wait. If you come out of hiding at the last minute, or you do some other thing, that the victim actually ends up seeing you. Well, actually, I was talking about, I guess, the argument on concealment of purpose being a surprise. And the jury instruction given, which was also given in Ashley some years before, is some other secret design to take the other person by surprise, which would seem to me could be rationally interpreted as concealment of purpose. It is loose. And that's why we go to the cases that that language comes out of to see what they're actually about. Because, again, it's reasonable notice. What's all the information out there? Not cherry picking. Well, the instruction seems to mean, could be interpreted to mean this, which is the instructions just, I don't know that it has actually any status at all. Well, no, I think it has a status of notice, though, if we're talking about Bowie. I mean, if, in a sense, people are trying to codify case law into a standard set of instructions, we know they're subject to interpretation by courts and potential modification. But, on the other hand, if a reasonable person could construe this instruction as saying, some other secret design to take another person by surprise is equivalent to concealment of purpose, which I think is not an unreasonable interpretation. It's hard to say how it's unforeseeable in 1981. Well, now we've moved not only from requiring folks to constructively read all the cases out there to find dictum about luring and that sort of thing. Now they have to go out and find what the instructions are being given. Those typically aren't even in the cases. But the instructions suggest what whoever drafts the model instructions or the trial judge, if the trial judge is formulating one for himself or herself, what their understanding of the case law is would not seem, unless there's something erroneous about the instruction, and there has not been a successful claim here that the instruction was erroneous or contrary statement of California law, that seems to suggest that this is within the realm of a reasonable reading of the California case law. Right. But the instruction doesn't give any intent to say concealment of purpose is all that's required. It's a phrase lifted directly out of Tuthill's suit at Ward and McNeil. Is there another instruction given to the jury where a physical concealment is identified as an element? Well, this is part of the problem. This actually started in all these cases as a sufficiency of the evidence claim. Morales, Webster, and Edwards, which is one of the other leading cases on this, all started out by saying there was insufficient evidence of lying in wait because there was no evidence of any physical concealment. And in Morales, the California Supreme Court said, well, that's not what this instruction or what the law requires. So it turned into a bully situation as the court interpreted that phrase from Tuthill, Ward, Sudek, and Thomas in a different way than it had been used in those cases. Yes, if you take the language out of context to those cases and what the cases were about and what the language was trying to describe, you could say, well, this is kind of vague. It might give some notice that not very much is required. But that's just the same problem as saying we don't really need to read the cases. We can just take some phrases out of it and say, well, this looks like it's foreshadowing the result here. I see I'm about two minutes, I guess. You don't have to use it all. Well, I wanted to make sure I addressed all the questions. Well, I passed over the Teague question quickly. I think it's adequately addressed in the brief. I think Summerlin controls if the right to be sentenced by a judge, a jury rather than a judge, is substantive. I think clearly the definition of the crime as it was in effect at the time it was committed is substantive. I think there's absolutely nothing to the claim that Bowie, in reality, leaving aside the Teague spin on it only applies to these other situations, is completely without merit. This Court has applied it several times in just sentencing-type issues. Other courts have done it. Rogers never would have come out the way it did because Rogers was clearly guilty of a manslaughter. The Court could have simply said, Bowie doesn't apply to you. Same with Lanier, Judge Lanier, who was sexually assaulting women in his chambers, and the issue was whether that was a civil rights violation. If Bowie only applied to completely innocent behavior, Judge Lanier never would have gotten Bowie relief. So I will sit down at this point. Thank you, Your Honor. Your Honor, if Mr. Webster stabbed Mr. Burke in his car and took his car, that's a robbery-murder. If he stabs him outside the car and takes his car, it's a robbery-murder. If he pulls the knife and drags him away from the car, my colleague has acknowledged that's a robbery-murder. What he wants this Court to hold is that by not showing him the knife and luring him away a quarter of a mile and then stabbing him and taking the car is somehow not a robbery-murder. Not even that. He wants to say that for a court to consider imposing robbery-murder liability would be completely unforeseeable. And that is just not a proposition that holds, Your Honor. Judge Schroeder asked about situations where there have been Bowie wins, and a number of them from the U.S. Supreme Court are identified at pages 21 and 22 of my brief, but a number of those situations were, for example, where a gentleman was on probation. One of the conditions of probation was that he had to report all arrests to his probation officer, and he got a traffic citation, which up until that time had never been considered an arrest. And then, of course, his probation was violated, and he said, but wait, I didn't know I was supposed to report that. And the court said, no, you're right. That novel interpretation of a traffic citation to mean an arrest was unforeseeable, and that violates the fair notice concept. Interestingly, all of those cases where there were Bowie wins in the U.S. Supreme Court are situations where it was innocent conduct. I mean, the guy wasn't really violating his probation. But the Supreme Court's never said it had to be. No, it didn't. They haven't said one way or the other, and that's the key to my Teague argument is we don't know. What about Rogers? I mean, Rogers winds up saying that it doesn't apply, but there was never any question in Rogers that the conduct was misconduct, it wasn't innocent, and yet the court went through a Bowie analysis. You're right. Rogers is interesting, Your Honor, because as applied to the facts of that case, you're right, even without the year-and-a-day rule, I think in Tennessee it would have been reduced to, Justice Scalia said in the dissent it would have been a manslaughter. The appellant was arguing that it should have been attempted murder. But either way, it would have been criminal conduct. You're correct. Two things, though, in Rogers. In Rogers, Justice O'Connor does echo the very same language that says the heart of Bowie is notice that the conduct was criminal. So they don't expressly address it even still in Rogers. But as applied to that case, it did cover conduct that admittedly was criminal. But here's the key. Rogers postdated the date of finality in this case. Date of finality for Teague purposes in this case was 1992. Up until at that point in time, the issue is, was the meaning of Bowie debatable? Was it debatable among reasonable jurists that Bowie might only apply to situations where the conduct was previously innocent and then had been made criminal? If we say that Rogers answers that question adversely to the warden's position in this case, that doesn't answer whether or not Teague. I take it you're not conceding that point, are you? No, because it really wasn't specifically addressed. And I don't know if that was even advanced in Rogers' case. Why didn't you make this good argument in front of the district court? Your Honor, in researching the briefs, we did advance, actually, we did advance the argument of Teague Light or something. Well, I didn't exactly say Teague, but I did advance the argument about what the meaning of Bowie was, that Bowie only covers. All right, well, I accept that argument. And I realize we're midstream in the district court case. I may be different. Actually, Your Honor, you raise an interesting question because the way the Bowie claim even came into this case is actually rather astounding. It was kind of inserted, if you look at footnote 49 of the findings in Rex, the magistrate judge says, I know this claim isn't really in the petition, but I'm going to go ahead and rule on it because I figure they'll probably amend it anyway. And then Judge Carlton, that oral argument, says, you know, I'm kind of thinking Bowie might be the way to go here. So, of course, subsequently the petitioner amends to add it. We opposed, obviously, to no avail. So you're right. It did kind of get injected into this midstream. Nevertheless, this court does have discretion to consider the Teague argument. And, in fact, in Shiro v. Risley, the Teague argument was asserted much later, and the U.S. Supreme Court still said the court has discretion. And your sister circuits have said unless there's a compelling reason in interest of justice to find it waived or unless it's expressly waived by the state, the court should consider the threshold Teague question. A question on that I actually should have asked when you were here earlier. You described this as being quintessentially, you said, procedural. And I'm puzzled because I think of criminal procedure, I think more of the search and seizure or so forth. This seems somewhat more substantive. Why do you say this is procedural? This is admittedly tricky, and here's why. It's because when courts are tasked with doing the constitutional Bowie analysis, what they have to do necessarily is go in and look at the state law, the evolution of state law, what was the state of the law at a given point in time. What they cannot do, what a federal court absolutely cannot do is decide what the state law is or what it means. You must defer to the California Supreme Court's decision in this Webster case of what is and what, according to the California Supreme Court, always has been the definition of robbery or the definition of lying in wait. This court can't change that. The only analysis this court does had nothing to do with the substance of what the law is, is the procedural aspect. Did the defendant have constitutionally adequate fair warning? Right. But it's not a question of substance because, in a sense, it's a judicial ex post facto analysis in a sense, and that is quintessentially substantive. I mean, what we're talking about is did the law change in a way that actually changed the elements of the crime here. But the determination of whether it was a constitutionally significant change has to do with whether the defendant procedurally was on notice. Was the nature of the evolution of the state law such that a defendant could reasonably foresee this holding? That has to do with procedure. What was the state of the law? How was it developing? What facts and cases and circumstances? You call that procedural. What's procedural about that? That has to do with the state of the law. What's the definition of the crime? But, again, the constitutional test that this court applies doesn't look at what the elements of the crime should be. It only looks at when the California Supreme Court tells us. We do that all the time. We have to render decisions based on our understanding of state law, which we are not free to interpret. We have to turn to the highest court of that state, but that's something we do all the time. I don't think of that as being procedural. Well, not every constitutional issue that involves the interpretation of state law may or may not be, depending on the nature of the claim. But the Bowie claim itself has, at its heart, notice. Was the state's criminal prosecution applied against a person without adequate notice? And when you get to issues like notice, you know, the sufficiency of pleadings or things like that, those are always characterized as procedural. Is this a glass half full or half empty? What is the significance of it in your view, of it being procedural or substantive? Well, it has to be procedural. That's a condition antecedent to the Teague argument. So if it's substantive, as Summerlin indicates, then Teague has no application. And you didn't make that argument to the district court? I did not. Let me ask you this. Do you think an ex post facto challenge is purely procedural? I think – Because what you seem to be saying is that if you use the words due process, it's automatically procedural. I don't mean to be that cavalier about it, Your Honor. I think the ex post facto situation is a little bit different because there you're doing – you are doing as a court statutory construction in the first instance. And then from that determining whether or not that was – Right. Go ahead. The problem I'm having with your Teague argument is that generally notice means it's a factual question. Whereas what we're talking about here is really a legal question, isn't it, as to interpretation of the statute? Agreed. But as counsel pointed out, I mean, we are engaging in the legal fiction here of what a reasonable defendant would have known based on the extant case law and statutory interpretation. No, but it's not a factual question of what to – Absolutely. Like, was this guy negligent in not knowing? Right. I mean, if that's – No, it is an objective test, what the reasonable person should have reasonably known based on the extant case law. Well, in Summerlin, basically what we said on that point was that certainly you may have a change in law that's part procedural, part substantive, but in effect, if you're changing the substantive elements of the crime or affecting some effect on it, making some effect on that, that that's sufficient substantive to take it out of Teague. And here we're basically saying, well, what were the elements of capital murder in California during that period of time? And if there were a significant radical change in the elements of capital murder, then Bowie applies, and if there weren't, it doesn't. It seems to me that's a substantive inquiry. The language that I found compelling in Summerlin, Your Honor, was where you indicated that Ring affected a redefinition of Arizona's criminal law. After Ring, Arizona's criminal law actually had changed. In this case, the Bowie violation, it doesn't change the law. That's the whole point, is that the California Supreme Court is saying this has always been the law, or at least it was up in the air until we decided. And in fact, no one is saying, even if there's a Bowie violation in this case, no one is saying that we can't still apply the expansive interpretation to another robbery case. The California law has not been changed here. It is what it is, it was, and it remains. It's only whether this defendant or a reasonable defendant had adequate notice of it. That sort of conflates the argument, though, again, because you're taking the assumption that there was no change in the law. Now, Bowie says, the Bowie analysis says, was there a change in the law? Did a judicial interpretation change the law? So as I understand your Teague argument, of course, Teague theory is you shouldn't apply procedural rules retroactively. What you're saying under Teague, if I understand your argument correctly, is we shouldn't apply, we should use Teague so that we can apply a change in substantive law retroactively. It seems to me that's antithetical to the underlying theory of Teague. That's actually, I'm not asserting that, Your Honor. I'm asserting that the nature of the Bowie violation itself has to do with notice, not an actual interpretation of what the state of law in California is. Okay. I think we understand your position on that. Thank you, Your Honor. Thank you. Your time has expired. That concludes the argument in this case and this Court's calendar for this morning. The Court stands adjourned. The Court is adjourned. The Court is adjourned. The Court is adjourned.
judges: Schroeder, Thomas, Clifton